461 F.3d 134
 Clifford B. MEACHAM, Thedrick L. Eighmie, and Allen G. Sweet, individually and on behalf of all other persons similarly situated, Plaintiffs-Appellees-Cross-Appellants,
James R. Quinn, Ph.D., Deborah L. Bush, Raymond E. Adams, Wallace Arnold, William F. Chabot, Allen E. Cromer, Paul M. Gundersen, Clifford J. Levendusky, Bruce E. Palmatier, Neil R. Pareene, William C. Reynheer, John K. Stannard, David W. Townsend, and Carl T. Woodman, Consolidated-Plaintiffs-Appellees,
Hildreth E. Simmons, Jr., Henry Bielawski, Ronald G. Butler, Sr., James S. Chambers, Arthur J. Kaszubski, David J. Kopmeyer, Christine A. Palmer, Frank A. Paxton, Janice M. Polsinelle, Teofils F. Turlais, and Bruce E. Vedder, Consolidated-Plaintiffs-Appellees,
v.
KNOLLS ATOMIC POWER LABORATORY, a/k/a KAPL, Inc., Lockheed Martin Corporation, and John J. Freeh, both individually and as an employee of KAPL and Lockheed Martin, Defendants-Appellants-Cross-Appellees.
 Docket No. 02-7378-cv(L).
 Docket No. 02-7474-cv(XAP).
 United States Court of Appeals, Second Circuit.
 Submitted After Remand: June 28, 2005.
 Decided: August 14, 2006.
 
 COPYRIGHT MATERIAL OMITTED COPYRIGHT MATERIAL OMITTED Margaret A. Clemens, Nixon Peabody LLP (John E. Higgins, on the brief), Rochester, NY, for Defendants-Appellants-Cross-Appellees.
 John B. Ducharme, Berger, DuCharme & Harp, LLP, Clifton Park, NY, for Plaintiffs-Appellees-Cross-Appellants.
 Laurie A. McCann, Daniel B. Kohrman, AARP Foundation Litigation; Melvin Radowitz, AARP, Washington, DC, for Amicus Curiae AARP in support of Plaintiffs.
 Stephen A. Bokat, Robin S. Conrad, Ellen Dunham Bryant, National Chamber Litigation Center, Washington, DC; Mark S. Dichter, Morgan, Lewis & Bockius LLP, Philadelphia, PA; Grace E. Speights, Anne M. Bradford, Jonathan C. Fritts, Morgan, Lewis & Bockius, LLP, Washington, DC, for Amicus Curiae Chamber of Commerce of the United States of America in support of Defendants.
 Nicholas M. Inzeo, Acting Deputy General Counsel, Philip B. Sklover, Associate General Counsel, Vincent J. Blackwood, Assistant General Counsel, Barbara L. Sloan, Attorney, Equal Employment Opportunity Commission, Washington, DC, for Amicus Curiae Equal Employment Opportunity Commission in support of Plaintiffs.
 Jennifer Bosco, National Employment Lawyers Association, San Francisco, CA; Cathy Ventrell-Monsees, Chevy Chase, MD, for Amicus Curiae National Employment Lawyers Association in support of Plaintiffs.
 Before McLAUGHLIN, JACOBS, and POOLER, Circuit Judges.
 JACOBS, Circuit Judge.
 
 
 1
 This case returns to us on remand from the United States Supreme Court. See Meacham v. Knolls Atomic Power Lab., 381 F.3d 56, 62 (2d Cir.2004) ("Meacham"), vacated and remanded by KAPL, Inc. v. Meacham, 544 U.S. 957, 125 S.Ct. 1731, 161 L.Ed.2d 596 (2005). Originally, we had reviewed this case on appeal from a judgment of the United States District Court for the Northern District of New York (Homer, M.J.), inter alia, denying the motion of defendants-appellants ("defendants") seeking judgment as a matter of law pursuant to Fed. R. Civ. 81 Cal. 588, 23 P. 50(b) after a jury verdict awarding damages to plaintiffs-appellees ("plaintiffs").[1] See Meacham v. Knolls Atomic Power Lab., 185 F.Supp.2d 193 (N.D.N.Y. 2002). Plaintiffs are former employees of defendant Knolls Atomic Power Laboratories ("KAPL"), which designs advanced nuclear propulsion systems; trains sailors in their use; and oversees their maintenance, repair, refueling and decommissioning. Plaintiffs lost their jobs at the Knolls Atomic Power Laboratory (the "Lab") in an involuntary reduction in force ("IRIF"), and sued under the Age Discrimination in Employment Act, 29 U.S.C. § 631(a), ("ADEA") and the New York Human Rights Law, N.Y. Exec. Law § 296(3-a)(a), ("HRL"). The jury verdict rested on a disparate-impact theory of liability. Previously, we held that (i) plaintiffs had established a prima facie case under the ADEA by demonstrating the disparate impact on older workers of the subjective decision-making involved in the IRIF; and (ii) notwithstanding defendants' facially legitimate business justification for the IRIF and its constituent parts, there was sufficient evidence of an equally effective alternative to the subjective components of the IRIF to support liability. See Meacham, 381 F.3d at 71-76. The Supreme Court vacated our judgment affirming the judgment of the district court and remanded for reconsideration in light of Smith v. City of Jackson, 544 U.S. 228, 125 S.Ct. 1536, 161 L.Ed.2d 410 (2005), which issued while defendants' petition for a writ of certiorari was pending. See KAPL, 544 U.S. 957, 125 S.Ct. 1731, 161 L.Ed.2d 596. We have considered City of Jackson and the parties' supplemental briefing, and we now vacate the judgment of the district court and remand with instructions to enter judgment as a matter of law in favor of defendants on all claims and to dismiss the case.
 
 I.
 
 2
 The Lab is funded by the United States Navy's Nuclear Propulsion Program ("NR") (jointly with the Department of Energy), which sets annual staffing limits for the facility in consultation with KAPL.[2] In fiscal year 1996, the NR imposed a more stringent limit on annual staffing levels and (at the same time) assigned additional work to the Lab that required new hires. Among the compliance measures adopted by KAPL was an IRIF in which plaintiffs, all of whom are over forty years of age, lost their jobs. Meacham, 381 F.3d at 62-63.
 
 
 3
 KAPL provided a guide for implementing the IRIF to participating (i.e., over-budget) managers. The guide instructed managers
 
 
 4
 to select employees for the IRIF by listing "all employees in [their] group[s] on [a] matrix"; ranking them between zero and ten for performance, flexibility, and criticality of their skills; and giving up to ten points for company service. Managers were to rate performance based on an average of the two most recent performance appraisals. The tests for making a flexibility determination were whether the employee's "documented skills [could] be used in other assignments that [would] add value to current or future Lab work" and whether the employee was "retrainable for other Lab assignments." Critical skills were those skills that were critical to continuing work in the Lab as a whole. In addition, KAPL directed managers to consider whether the "individual's skill [was] a key technical resource for the NR program" and whether "the skill [was] readily accessible within the Lab or generally 23 available from the external market."
 
 
 5
 Id. at 63-64 (brackets and emphasis in original). Once employees were thus ranked, managers were instructed to identify for layoff employees at the bottom—as necessary to achieve the required staff reduction—and then to perform an adverse impact analysis to determine whether the layoffs "might have a disparate impact on a protected class of employees." Id. at 64. To ensure compliance with the ADEA, managers were instructed to perform an analysis "similar" to the EEOC's "four-fifths" rule, by which (according to the guide) a "serious discrepancy" would exist "if the selection rate for a protected group is greater than 120% of the rate for the total population." Id. Once this process was completed,
 
 
 6
 a review board was to assess the manager's selections "to assure adherence to downsizing principles as well as minimal impact on the business and employees." Finally, KAPL's general manager, John Freeh, and its [general] counsel, Richard Correa, were to review the final IRIF selections and the impact analyses.
 
 
 7
 
 Id.
 
 
 
 8
 In the end, 245 out of an estimated 2,063 eligible employees were placed on the matrices; thirty-one employees on the matrices were selected for layoff, thirty of whom were over forty years of age.
 
 II.
 
 9
 In Meacham, we held that plaintiffs adduced evidence sufficient to establish a prima facie case for disparate-impact liability under the ADEA. Id. at 71-74. Plaintiffs identified a specific employment practice—KAPL's "unaudited and heavy reliance on subjective assessments of `criticality' and `flexibility'" in implementing the IRIF — and presented evidence supporting a reasonable inference that the practice caused the "startlingly skewed results." Meacham, 381 F.3d at 75 n. 8. We see nothing in City of Jackson that casts doubt on this holding. City of Jackson reiterated the requirement that disparate-impact plaintiffs under the ADEA are "`responsible for isolating and identifying the specific employment practices that are allegedly responsible for any observed statistical disparities,'" 544 U.S. at 241, 125 S.Ct. 1536 (quoting Wards Cove Packing Co. v. Atonio, 490 U.S. 642, 656, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989)) (emphasis in City of Jackson); in Meacham, we held that plaintiffs had satisfied that specificity requirement, see Meacham, 381 F.3d at 74.
 
 A.
 
 10
 The matrix for adjudicating disparate-impact claims, once a plaintiff has made out a prima facie case, was first authoritatively established in Wards Cove Packing Co. v. Atonio, in the context of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"). 490 U.S. 642, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989). The employer assumes the burden of producing evidence that the challenged employment practice has a legitimate business justification, see id. at 658-59, 109 S.Ct. 2115; see also Watson v. Fort Worth Bank & Trust, 487 U.S. 977, 998, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988); however, "`the ultimate burden of proving that discrimination against a protected group has been caused by a specific employment practice remains with the plaintiff at all times,'" Wards Cove, 490 U.S. at 659, 109 S.Ct. 2115 (quoting Watson, 487 U.S. at 997, 108 S.Ct. 2777). Thus, after the employer has proffered a legitimate business justification, the plaintiff bears the burden of persuading the jury that the employer's justification does not pass the test of "business necessity" — i.e., either that the challenged practice does not serve, in a significant way, the legitimate employment goals of the employer or that "`other tests or selection devices, without a similarly undesirable . . . effect, would also serve the employer's legitimate [hiring] interest[s].'" Id. at 659-60, 109 S.Ct. 2115 (quoting Albemarle Paper Co. v. Moody, 422 U.S. 405, 425, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975)); see also Watson, 487 U.S. at 998-99, 108 S.Ct. 2777; City of Jackson, 544 U.S. at 243, 125 S.Ct. 1536 (referencing "business necessity test"). In Smith v. Xerox Corp., we extended this burden-shifting approach to disparate-impact claims under the ADEA. 196 F.3d 358, 365 (2d Cir.1999).
 
 
 11
 We held in Meacham that KAPL had advanced "a facially legitimate business justification for the IRIF and its constituent parts[—]'to reduce its workforce while still retaining employees with skills critical to the performance of KAPL's functions.'" Meacham, 381 F.3d at 74 (quoting Meacham v. Knolls Atomic Power Lab., 185 F.Supp.2d 193, 213 (N.D.N.Y.2002)). While such a justification, unchallenged, "would preclude a finding of disparate impact [liability]," id., we ruled — following the precedent established in Xerox — that plaintiffs could prevail nevertheless by demonstrating that KAPL's justification failed the test of "business necessity," i.e., by challenging the justification head-on or by showing "`that another practice would achieve the same result at a comparable cost without having a disparate impact on the protected group,'" id. at 74 (quoting Xerox, 196 F.3d at 365). We concluded that plaintiffs had discharged their burden because "[a]t least one suitable alternative is clear from the record: KAPL could have designed an IRIF with more safeguards against subjectivity, in particular, tests for criticality and flexibility that are less subject to managerial bias."[3] Id. at 75.
 
 
 12
 That analysis is untenable on this remand because, in City of Jackson, the Supreme Court held that the "business necessity" test is not applicable in the ADEA context; rather, the appropriate test is for "reasonableness," such that the employer is not liable under the ADEA so long as the challenged employment action, in relying on specific non-age factors, constitutes a reasonable means to the employer's legitimate goals. See City of Jackson, 544 U.S. at 243, 125 S.Ct. 1536 ("Unlike the business necessity test, which asks whether there are other ways for the employer to achieve its goals that do not result in a disparate impact on a protected class, the reasonableness inquiry includes no such requirement."); see also id. at 239, 125 S.Ct. 1536 (stating that there is no liability under the ADEA if the adverse impact of the challenged employment action is "attributable to a nonage factor that [i]s `reasonable'"). The "reasonableness" test in City of Jackson is derived primarily from wording in the ADEA "that significantly narrows its coverage by permitting any `otherwise prohibited' action `where the differentiation is based on reasonable factors other than age.'" City of Jackson, 544 U.S. at 233, 125 S.Ct. 1536 (quoting ADEA § 4(f)(1), 29 U.S.C. § 623(f)(1)).[4] The Court emphasized that (i) Congress had refrained from addressing the ADEA in the Civil Rights Act of 1991, even though the Act had amended Title VII to expand the narrow construction of an "employer's exposure to liability on a disparate-impact theory" established in Wards Cove, see City of Jackson, 544 U.S. at 240, 125 S.Ct. 1536; see also Civil Rights Act of 1991, 105 Stat. 1071; and (ii) "age, unlike race or other classifications protected by Title VII, not uncommonly has relevance to an individual's capacity to engage in certain types of employment," City of Jackson, 544 U.S. at 240, 125 S.Ct. 1536.
 
 
 13
 While "as a general rule, one panel of this Court cannot overrule a prior decision of another panel[,] ... an exception to this general rule arises where there has been an intervening Supreme Court decision that casts doubt on our controlling precedent." Union of Needletrades, Indus. & Textile Employees v. INS, 336 F.3d 200, 210 (2d Cir.2003). In light of City of Jackson, it is clear that Xerox is no longer good law insofar as it holds that the "business necessity" test governs ADEA disparate-impact claims.[5]
 
 B.
 
 14
 It remains to apply the "reasonableness" test to plaintiffs' disparate-impact claims, which survived application of the "business necessity" test in Meacham.
 
 
 15
 First, we consider who bears the burden of persuasion with respect to the "reasonableness" of the employer's proffered business justification under the ADEA disparate-impact framework. The best reading of the text of the ADEA—in light of City of Jackson and Wards Cove— is that the plaintiff bears the burden of persuading the factfinder that the employer's justification is unreasonable. See Pippin v. Burlington Res. Oil & Gas Co., 440 F.3d 1186, 1200 (10th Cir.2006) (holding that under City of Jackson, once employer has satisfied burden of producing evidence of legitimate business justification, to prevail "employee must ultimately persuade the factfinder that the employer's asserted basis for the neutral policy is unreasonable"). The following considerations lead us to that conclusion:
 
 
 16
 1. In substituting the "reasonableness" test for the "business necessity" test, City of Jackson nowhere suggested that the burden of persuasion with respect to the legitimacy of the business justification was being shifted to the employer. That is not dispositive, however: the facts raised no close question as to the reasonableness of the employer's proffered business justification. See City of Jackson, 544 U.S. at 241-43, 125 S.Ct. 1536.
 
 
 17
 2. City of Jackson says that "Wards Cove's pre-1991 interpretation of Title VII's identical language remains applicable to the ADEA." Id. at 240, 125 S.Ct. 1536. Wards Cove explained that the plaintiff bears the burden of persuasion to defeat the employer's "business necessity" justification because the plaintiff bears the ultimate burden under Title VII to "prove that it was `because of [his] race, color,' etc., that he was denied a desired employment opportunity." Wards Cove, 490 U.S. at 660, 109 S.Ct. 2115 (quoting 42 U.S.C. § 2000e-2(a)). The analogous § 4(a) of the ADEA, 29 U.S.C. § 623(a), is identical to that of Title VII "[e]xcept for substitution of the word `age' for the words `race, color, religion, sex, or national origin.'" City of Jackson, 544 U.S. at 233, 125 S.Ct. 1536. City of Jackson thus applies the reasoning and analysis of Wards Cove to disparate-impact claims under the ADEA, with the effect that an employer defeats a plaintiff's prima facie case by producing a legitimate business justification, unless the plaintiff is able to discharge the ultimate burden of persuading the factfinder that the employer's justification is unreasonable. Any other interpretation would compromise the holding in Wards Cove that the employer is not to bear the ultimate burden of persuasion with respect to the "legitimacy" of its business justification. Wards Cove, 490 U.S. at 659-60, 109 S.Ct. 2115.
 
 
 18
 3. City of Jackson reasoned that the "narrower" scope of disparate-impact liability under the ADEA (as compared with Title VII) is justified because "age, unlike race or other classifications protected by Title VII, not uncommonly has relevance to an individual's capacity to engage in certain types of employment," and that as a result, "certain employment criteria that are routinely used may be reasonable despite their adverse impact on older workers as a group." City of Jackson, 544 U.S. at 240-41, 125 S.Ct. 1536. It would seem redundant to place on an employer the burden of demonstrating that routine and otherwise unexceptionable employment criteria are reasonable.
 
 
 19
 In dissent, Judge Pooler argues that the "reasonable factors other than age" ("RFOA") provision, ADEA § 4(f)(1), 29 U.S.C. § 623(f)(1), is in the nature of an affirmative defense for which the employer should bear the burden of persuasion. See Dissenting Op. at 148-152. In support of this argument, Judge Pooler observes that the provision (i) permits conduct that is "otherwise prohibited"—language that suggests an affirmative defense, see id. at 139; and (ii) is listed in the statute after the bona fide occupational qualification ("BFOQ") exception—an affirmative defense for which the Supreme Court has strongly suggested the employer bears the burden of persuasion, see id. at 139-140 (citing City of Jackson, 544 U.S. 228, 233 n. 3, 125 S.Ct. 1536, 161 L.Ed.2d 410 (2005)); see also Western Air Lines, Inc. v. Criswell, 472 U.S. 400, 416 n. 24, 105 S.Ct. 2743, 86 L.Ed.2d 321 (1985); Air Line Pilots Ass'n v. TWA, 713 F.2d 940, 954 (2d Cir.1983) (establishing that BFOQ provision "may be invoked only if an employer proves `plainly and unmistakably' that its employment practice meets the `terms and spirit' of the remedial legislation"), aff'd in part & rev'd in part on other grounds sub nom TWA v. Thurston, 469 U.S. 111 (1985).[6] There is some force to this argument, but it does not withstand City of Jackson, which emphasized that there are reasonable and permissible employment criteria that correlate with age. (This case is a fine example of the phenomenon.) It is therefore hard to see how an ADEA plaintiff can expect to prevail on a showing of disparate impact based on a factor that correlates with age without also demonstrating that the factor is unreasonable.[7]
 
 
 20
 Our conclusion is reinforced by the history of the development of the "business necessity" test. The Supreme Court established the "business necessity" test in Griggs v. Duke Power Co., explaining that "Congress has placed on the employer the burden of showing that any given requirement must have a manifest relationship to the employment in question." 401 U.S. 424, 432, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). Although Griggs failed to locate the source of the test in any particular statutory provision of Title VII, Wards Cove later clarified that the "burden" referred to in Griggs was the burden of production, not persuasion, see supra; and Albemarle Paper Co. v. Moody, 422 U.S. 405, 425, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975), located the source of the "business necessity" test in Title VII § 703(h), 42 U.S.C. § 2000e-2 (h), which provides that it shall not
 
 
 21
 be an unlawful employment practice for an employer to give and to act upon the results of any professionally developed ability test provided that such test, its administration or action upon the results is not designed, intended or used to discriminate because of race, color, religion, sex or national origin.
 
 
 22
 This section, like the RFOA provision in the ADEA, lends itself to interpretation as an affirmative defense, with the burden of persuasion on the employer; but the Supreme Court has determined that it is not, and we are convinced that there is insufficient reason to depart from that analysis in interpreting the ADEA.
 
 
 23
 Applying the Wards Cove burden shifting framework—as modified in the ADEA context by City of Jackson—to the facts before us, we reaffirm our conclusion in Meacham that KAPL satisfied its burden of producing evidence suggesting that a legitimate business justification motivated the challenged components of the IRIF. See supra. But we must revisit that question because we followed the district court in characterizing KAPL's legitimate justification as the reduction of KAPL's "`workforce while still retaining employees with skills critical to the performance of KAPL's functions.'" Meacham, 381 F.3d at 74 (quoting Meacham v. Knolls Atomic Power Lab., 185 F.Supp.2d 193, 213 (N.D.N.Y.2002)). Evidence supports that business objective, but our characterization did not conform to the specific employment practice identified by the plaintiffs: the IRIF's "unaudited and heavy reliance on subjective assessments of `criticality' and `flexibility,'" supra. Defendants' burden was to advance a justification for these features of the IRIF, and it was plaintiffs' burden to demonstrate that that justification is unreasonable. The record demonstrates that defendants discharged their burden, and plaintiffs did not.
 
 
 24
 At trial, defendants' expert witness—a specialist in industrial psychology with substantial corporate downsizing experience—testified that the criteria of "criticality" and "flexibility" were ubiquitous components of "systems for making personnel decisions," and that the subjective components of the IRIF were appropriate because the managers conducting the evaluations were knowledgeable about the requisite criteria and familiar with the capabilities of the employees subject to evaluation. KAPL's staffing manager testified to the importance of criticality and flexibility to ensuring that KAPL could carry on operations with a shrinking workforce. This evidence unquestionably discharged defendants' burden of production—it suggested that the specific features of the IRIF challenged by plaintiffs were routinely—used components of personnel decisionmaking systems in general, and were appropriate to the circumstances that provoked KAPL's IRIF.
 
 
 25
 The next question is whether plaintiffs discharged their burden of demonstrating that the justification was unreasonable. "Unlike the business necessity test, which asks whether there are other ways for the employer to achieve its goals that do not result in a disparate impact on a protected class, the reasonableness inquiry includes no such requirement." City of Jackson, 544 U.S. at 243, 125 S.Ct. 1536; see also id. at 240, 125 S.Ct. 1536 ("[T]he scope of disparate-impact liability under ADEA is narrower than under Title VII."). In determining whether plaintiffs have demonstrated that KAPL's relatively subjective and unaudited procedures for measuring "criticality" and "flexibility" were unreasonable, we keep in mind that "we are not a super-personnel department." Byrnie v. Town of Cromwell Bd. of Educ., 243 F.3d 93, 106 (2d Cir.2001); see also Furnco Constr. Corp. v. Waters, 438 U.S. 567, 578, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978) ("Courts are generally less competent than employers to restructure business practices."). "It would be a most radical interpretation of Title VII for a court to enjoin use of an historically settled process and plainly relevant criteria largely because they lead to decisions which are difficult for a court to review." Zahorik v. Cornell Univ., 729 F.2d 85, 96 (2d Cir.1984); but see Albemarle Paper, 422 U.S. at 433, 95 S.Ct. 2362 (expressing concern over "a `standard' that was extremely vague and fatally open to divergent interpretations"). The range of reasonable personnel systems is wide in a fluid and adaptive economy.
 
 
 26
 As we observed in Meacham, plaintiffs presented probative evidence tending to show that: (i) KAPL's criteria were subjective (and "imprecise at best"); (ii) "the subjectivity disproportionately impacted older employees"; (iii) KAPL "observed that the disproportion was gross and obvious"; and (iv) KAPL "did nothing to audit or validate the results." Meacham, 381 F.3d at 75 & n. 7.
 
 
 27
 Moreover, even though KAPL implemented some of its established guidelines for the IRIF, see supra, compliance was uneven. Managers were trained to ensure that they understood the matrix criteria definitions and the process for analyzing the completed matrices. But the company's only disparate-impact analysis of the employees selected for layoff was done by a human resources manager who lacked training or serious preparation, and whose technique was to compare the average age of the workforce before and after the IRIF, see Meacham, 381 F.3d at 64; given the size of KAPL's workforce, this technique was inadequate to identify age-related discrepancies resulting from a personnel action that affected only thirty-one employees. See id.
 
 
 28
 Per the guide instructions, KAPL's review board assessed the design and execution of the IRIF—including the process for constructing matrices and the final layoff decisions—to ensure that they conformed to KAPL's business needs; but the review board did not assess age discrimination issues. See id. KAPL's general counsel conducted a legal review of the IRIF after its completion, consulting with the company's human resources representatives and some managers about employee scoring and placement on the matrices, as well as about individual layoff decisions. See id. The general counsel was familiar with the ADEA and apparently aware of the viability of the disparate-impact theory in the Second Circuit at the time; however, he did not analyze the results of the IRIF, explaining that he was only concerned with whether "[I]RIF decisions were properly made" and "legitimate." Id.
 
 
 29
 Plaintiffs, who bear the burden of demonstrating that KAPL's action was unreasonable, did not directly challenge the testimony of KAPL principals regarding the planning and execution of the IRIF. However, Dr. Janice Madden, an employment discrimination expert and experienced statistician, testified for plaintiffs that (i) the probability of the age disparities at various stages of the IRIF happening by chance was so low as to suggest to a high degree of statistical significance that the disparities were not the result of chance;[8] (ii) "criticality" and "flexibility" were the criteria most responsible statistically for the selection of individuals to be laid off; and (iii) the procedures established for review of the decisions made by individual managers "did not offer adequate protections to keep the prejudices of managers from influencing the outcome." Id. at 65.
 
 
 30
 Have plaintiffs discharged their burden? It is important to distinguish between evidence that KAPL's IRIF resulted in an unlikely, "startlingly skewed" age distribution of laid-off employees—which is relevant to plaintiffs' prima facie case—and evidence that KAPL's business justification for the specific design and execution of the IRIF was "unreasonable." The fact that the IRIF resulted in a skewed age distribution of laid-off employees is not itself necessarily probative of whether KAPL's business justification for particular features of its IRIF was "reasonable." As the Supreme Court observed in City of Jackson, age is often highly correlated with legitimate employment needs. See City of Jackson, 544 U.S. at 240, 125 S.Ct. 1536 ("[A]ge, unlike race or other classifications protected by Title VII, not uncommonly has relevance to an individual's capacity to engage in certain types of employment."). To draw a negative inference from the ex post age distribution of laid-off employees would inhibit reliance on reasonable and useful employment criteria that are highly correlated with age.
 
 
 31
 The probative record evidence suggests that the factors used in KAPL's IRIF could have been better drawn and that the process could have been better scrutinized to guard against a skewed layoff distribution. However, KAPL set standards for managers constructing matrices and selecting employees for layoff, and it did monitor the implementation of the IRIF. The IRIF restricted arbitrary decision-making by individual managers, and the measures that KAPL put in place to prevent such arbitrary decision-making and ensure that the layoffs satisfied KAPL's business needs—while not foolproof—were substantial. Any system that makes employment decisions in part on such subjective grounds as flexibility and criticality may result in outcomes that disproportionately impact older workers; but at least to the extent that the decisions are made by managers who are in day-to-day supervisory relationships with their employees, such a system advances business objectives that will usually be reasonable.
 
 
 32
 "[T]here may have been other reasonable ways for [KAPL] to achieve its goals" (as we held in Meacham, 381 F.3d at 75), but "the one selected was not unreasonable." City of Jackson, 544 U.S. at 243, 125 S.Ct. 1536.
 
 III.
 
 33
 "[S]ince claims under the HRL are analyzed identically to claims under the ADEA[,] ... the outcome of an employment discrimination claim made pursuant to the HRL is the same as it is under the ADEA...." Xerox, 196 F.3d at 363; see also Leopold v. Baccarat, Inc., 174 F.3d 261, 264 n. 1 (2d Cir.1999). Moreover, the HRL contains a RFOA exception identical to that contained in the ADEA. See N.Y. Exec. L. § 296(3-a)(d). Therefore, we have no reason to think that, in analyzing the HRL, New York will reject our interpretation of the impact of City of Jackson on analysis of the ADEA. Plaintiffs' HRL claims therefore fail for the same reason as their ADEA claims: plaintiffs have not satisfied their burden of demonstrating that defendants' business justification was unreasonable.[9]
 
 IV.
 
 34
 Because we conclude that plaintiffs' ADEA and HRL claims fail, we reach plaintiffs' cross-appeal challenging the decisions of the district court (i) to strike the report of plaintiffs' expert, Madden, at the end of the liability phase of the trial, and (ii) to exclude from evidence the document entitled "Eligibility Requirement Options for [Voluntary Separation Plan]." We review a district court's evidentiary rulings "only for manifest error because the decision of which evidence is admissible is one that is committed to the district judge's discretion." Barrett v. Orange County Human Rights Comm'n, 194 F.3d 341, 346 (2d Cir.1999). The district court committed no manifest error, because (i) Madden testified at length as to the contents of her report and (ii) the document relating to the voluntary separation plan was immaterial because—as we held in Meacham—the plan was not a suitable alternative to the challenged employment practice. See Meacham, 381 F.3d at 75.
 
 * * *
 
 35
 For the reasons set forth above, we vacate the judgment of the district court, and remand with instructions to enter judgment as a matter of law in favor of defendants on all claims and to dismiss the case.
 
 
 36
 Judge POOLER dissents in a separate opinion.
 
 
 
 Notes:
 
 
 [1]
 The complete procedural history of this case in the district court can be found atMeacham, 381 F.3d at 65-68.
 
 
 [2]
 A complete factual description of this case can be found inMeacham, 381 F.3d at 62-65.
 
 
 [3]
 According to the district court, plaintiffs overcame KAPL's showing of "business necessity" by presenting evidence of suitable alternative measures,i.e., a hiring freeze or expansion of KAPL's voluntary separation plan. However, these were alternatives to the IRIF itself (which we concluded was justified), not alternatives to the specific components of the IRIF that plaintiffs had identified as discriminatory. See Meacham, 381 F.3d at 75.
 
 
 [4]
 ADEA § 4(f)(1), 29 U.S.C. § 623(f)(1), reads in pertinent part:
 It shall not be unlawful for an employer, employment agency, or labor organization ... to take any action otherwise prohibited under subsections (a), (b), (c), or (e) of this section where age is a bona fide occupational qualification reasonably necessary to the normal operation of the particular business, or where the differentiation is based on reasonable factors other than age, or where such practices involve an employee in a workplace in a foreign country ....
 (emphasis added).
 
 
 [5]
 Judge Pooler argues in dissent thatCity of Jackson "did not state or imply ... that the `business necessity' part of the Wards Cove analysis ... no longer exists as part of the [ADEA] disparate impact analysis." Dissenting Op. at 148. That is an unnatural reading of City of Jackson, which (i) directly contrasts the "business necessity test" with the "reasonableness inquiry," City of Jackson, 544 U.S. at 243, 125 S.C1.. 1536, and (ii) makes no suggestion in the course of establishing and applying the reasonableness inquiry that the business necessity test is available in the alternative. The dissent's approach would introduce a redundant (and counterintuitive) step in the analysis, with disparate-impact plaintiffs required to demonstrate that an employer's proffered business justification fails the business necessity test, at which point the employer would still prevail upon demonstrating that the justification was nonetheless "reasonable." (No one has previously complained that the burden-shifting framework requires more steps.) The dissent also rests in part on the mistaken assumption that "the Wards Cove analysis is a judicially created doctrine," see Dissenting Op. at 148, and hence that the "business necessity" test established therein survives City of Jackson to the extent that the reasoning in City of Jackson was based on an interpretation of the "reasonable factors other than age" ("RFOA") provision of the ADEA, see ADEA § 4(f)(1), 29 U.S.C. § 623(f)(1). But, as we demonstrate below, see supra at 142-143, the source of the "business necessity" test established in Griggs v. Duke Power Co., 401 U.S. 424, 432, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971), was later traced to Title VII § 703(h), 42 U.S.C. § 2000e-2 (h), see Albemarle Paper Co. v. Moody, 422 U.S. 405, 425, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975), which (like the RFOA provision) is subject to interpretation as an affirmative defense, even though it is not.
 
 
 [6]
 A provision of the regulations promulgated by the Equal Employment Opportunity Commission ("EEOC"), the agency statutorily charged with implementing the ADEA,see 29 U.S.C. § 628, interprets ADEA § 4(f)(1) as placing the burden of persuasion with respect to a RFOA on the employer in the context of disparate treatment. See 29 C.F.R. 1625.7(e) ("When the exception of a [RFOA] is raised against an individual claim of discriminatory treatment, the employer bears the burden of showing that the [RFOA] exists factually.") (internal quotation marks omitted). We are disinclined to accord this interpretation any weight given that (i) we are interpreting the RFOA provision in the context of disparate impact; and (ii) City of Jackson directly contradicts 29 C.F.R. 1625.7(d), which interprets the RFOA provision as mandating a "business necessity" test when a plaintiff has established a prima facie case of disparate impact, and thereby casts substantial doubt on the soundness of the relevant EEOC regulations.
 
 
 [7]
 The dissent points out thatCity of Jackson characterized the BFOQ exception as an "affirmative defense," see Dissenting Op. at 149 (citing City of Jackson, 544 U.S. at 233 n. 3, 125 S.Ct. 1536); this makes it all the more telling that the opinion did not so characterize the RFOA provision. Moreover, the cases cited in the dissent as characterizing the RFOA provision as an affirmative defense, see Dissenting Op. at 151, are inapt because they all (i) concern suits alleging disparate treatment, not disparate impact, and (ii) pre-date City of Jackson.
 
 
 [8]
 Dr. Madden explained that a disparity is statistically significant if "the probability that [it] could happen by chance is less than 5 percent."Meacham, 381 F.3d at 65.
 
 
 [9]
 We held inMeacham that defendants had waived their argument that "a disparate impact claim is conceptually impossible" under the HRL because they did not raise the argument until their post-verdict motion. See Meacham, 381 F.3d at 71. We enforce the waiver and do not consider the argument. However, defendants have not waived the argument that their business justification was "reasonable," because defendants have consistently maintained that plaintiffs' HRL claims should be dismissed because their ADEA claims fail. Defendants repeatedly sought judgment as a matter of law with respect to both the ADEA and HRL claims, and the district court analyzed the HRL and ADEA claims together. See Meacham, 381 F.3d at 66 ("[D]efendants moved for summary judgment dismissing all of plaintiffs' claims.") (emphasis added); Meacham v. Knolls Atomic Power Lab., 185 F.Supp.2d 193, 206 (N.D.N.Y. 2002) ("A plaintiff may establish violations of the ADEA and the HRL under theories of disparate treatment and disparate impact.").
 
 
 POOLER, Circuit Judge, dissenting:
 
 37
 I respectfully dissent because I do not agree that Smith v. City of Jackson, 544 U.S. 228, 125 S.Ct. 1536, 161 L.Ed.2d 410 (2005) requires vacatur of the district court judgment. The concerns animating my disagreement with the majority are (1) the majority improperly conflates the analysis of proof of a reasonable factor other than age ("RFOA") with the legitimate business justification analysis as it is used in a disparate impact analysis; (2) the majority errs by assigning to plaintiffs the burden of proving that a RFOA does not exist; and (3) the majority improperly reaches the asserted RFOA error because, although defendants pleaded an affirmative RFOA defense, they did not seek a charge or a verdict sheet question on that defense, thus requiring that we find fundamental error, which does not exist, to reach the claimed error.
 
 I. Impact of City of Jackson on ADEA Disparate Impact Analysis.
 
 38
 City of Jackson has a three-fold impact on ADEA disparate impact analysis. First, the Supreme Court held 23 that disparate impact claims can be proven under the ADEA. 544 U.S. at 240, 125 S.Ct. 1536. Second, it held that the disparate impact analysis contained in Wards Cove Packing Co. v. Atonio, 490 U.S. 642, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989), continued to apply in ADEA cases, albeit not in Title VII cases. See City of Jackson, 544 U.S. at 240, 125 S.Ct. 1536 ("Wards Cove's pre-1991 interpretation of Title VII's identical language remains applicable to the ADEA."). Third, the Court held that an employee could not defend against proof of a RFOA by showing that another reasonable method to reach the employer's goals existed. See id. at 243 ("While there may have been other reasonable ways for the City to achieve its goals, the one selected was not unreasonable. Unlike the business necessity test, which asks whether there are other ways for the employer to achieve its goals that do not result in a disparate impact on a protected class, the reasonableness inquiry includes no such requirement.").
 
 
 39
 As indicated in the majority opinion, City of Jackson's first holding is consonant with our precedent and needs no further analysis. The second holding—that a Wards Cove disparate impact analysis remains applicable—does require further examination. The Wards Cove Court analyzed the judicially created burdens of proof for disparate impact analysis under Title VII. See 490 U.S. at 656-661, 109 S.Ct. 2115. The Court held that after the plaintiffs establish a prima facie case, the analysis shifts to the legitimacy of the business justification proffered by the employer, and that "the dispositive issue [at that stage] is whether a challenged practice serves, in a significant way, the legitimate employment goals of the employer." Id. at 659, 109 S.Ct. 2115. The Court then held that plaintiff retained the ultimate burden of proving discrimination and added that if the "[employees] cannot persuade the trier of fact on the question of petitioners' business necessity defense, [the employees] may still be able to prevail." Id. at 660, 109 S.Ct. 2115. To succeed at this stage, the employees must persuade the factfinder that "`other tests or selection devices, without a similarly undesirable racial effect would also serve the employer's legitimate [hiring] interest[s].'" Id. (quoting Albemarle Paper Co. v. Moody, 422 U.S. 405, 425, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975)). The City of Jackson Court's adherence to Wards Cove in the ADEA disparate-impact analysis does not change the law of this circuit because we have long used the Wards Cove analysis in ADEA disparate impact cases. See, e.g., Meacham v. KAPL, 381 F.3d 56, 71-76 (2d Cir.2004).
 
 
 40
 At trial, the district court correctly stated the Wards Cove burdens in its charge, and defendants did not object. The jury then found that plaintiffs satisfied their burden of proving disparate-impact discrimination. Although the district court set aside the jury's finding that defendants did not proffer a legitimate business justification, see Meacham, 381 F.3d at 74, it refused to set aside the verdict—and we affirmed—because plaintiffs had identified an alternative that would equally well serve KAPL's business purpose, id. at 75. Therefore, both the district court and this court performed exactly the analysis required by Wards Cove. As a result, the second holding of City of Jackson does not require vacatur of the district court judgment.
 
 
 41
 I turn, then, to the third holding in City of Jackson—that the RFOA exemption of 29 U.S.C. § 623(f)(1) cannot be defeated by a showing that other equally effective alternatives that do not have an adverse impact on older workers are available. In vacating the district court's judgment and directing the dismissal of the complaint, the majority holds that "[i]n light of City of Jackson, it is clear that [Smith v. Xerox Corp., 196 F.3d 358 (2d Cir.1999)] is no longer good law insofar as it holds that the `business necessity' test governs ADEA disparate impact test claims." It is here that the majority, in my view, impermissibly conflates the Supreme Court's holding on an age discrimination disparate impact analysis with its holding on the RFOA defense. The Supreme Court held that the Wards Cove analysis continues to govern ADEA disparate impact claims. See City of Jackson, 544 U.S. at 240, 125 S.Ct. 1536. It did not state or imply that the "business necessity" part of the Wards Cove analysis—on which plaintiffs bear the burden of proof—no longer exists as part of the disparate impact analysis.
 
 
 42
 We should not make the leap between a disparate-impact analysis and a RFOA analysis—which the Supreme Court did not make explicitly or implicitly in City of Jackson—because the Wards Cove disparate impact analysis and RFOA are very different doctrines. Throughout the entire Wards Cove analysis, the plaintiffs continue to bear the burden of persuasion with respect to disparate impact. See 490 U.S. at 659, 109 S.Ct. 2115. However, in a RFOA analysis, as I argue below, the employer bears the burden of proof. Further, the Wards Cove analysis is a judicially created[1] doctrine setting forth what employees must demonstrate to prevail on a disparate impact claim under the ADEA, see Wards Cove, 490 U.S. at 650-661, 109 S.Ct. 2115, while the RFOA is a statutory exemption to liability otherwise established by plaintiffs under a disparate impact analysis, see 29 U.S.C. § 623(f)(1); City of Jackson, 544 U.S. at 239, 125 S.Ct. 1536 (reasoning that "[i]t is. in cases involving disparate-impact claims that the RFOA provision plays its principal role by precluding liability if the adverse impact was attributable to a nonage factor that was `reasonable.'"). The majority implicitly suggests that because the RFOA provision does not require that an employer use the most reasonable alternative or even an equally reasonable alternative, the plaintiffs' demonstration of equally effective practices that would serve the employer's legitimate goal no longer serves any purpose. This logic is sound only if one accepts two premises: (1) that "legitimate business justification" means the same thing as "reasonable factor other than age," and (2) that the employee bears the burden of proof under the RFOA provision. As outlined in the next section, existing cases, legislative history, and statutory structure overwhelmingly support the view that employers bear the burden of establishing a RFOA. In addition, I am not at all certain that "legitimate business justification" and "reasonable factor other than age" should be construed to mean the same thing. Therefore, I believe the district court and this court applied Wards Cove correctly to plaintiffs' disparate-impact claim.
 
 II. Burden of Proof
 
 43
 To determine whether a claim that an employment determination rests on a "reasonable factor other than age," within the meaning of 29 U.S.C. § 623(f)(1), (1) is properly characterized as an affirmative defense, placing the burden of proof on the employer, or (2) must be negated as part of plaintiff's overall burden of proving age discrimination within a Wards Cove disparate impact analysis, I look first to the language of the statute that creates both liability and exemptions from liability for age discrimination, 29 U.S.C. § 623. See Gottlieb v. Carnival Corp., 436 F.3d 335, 337 (2d Cir.2006) ("Statutory analysis begins with the text and its plain meaning, if it has one.") Only if the statute is ambiguous, is resort to canons of construction permitted. 9 ambiguity, legislative history may be examined to determine congressional intent. See id. at 338.
 
 
 44
 The ADEA provides that "It shall be unlawful for an employer ... to limit, segregate, or classify his employees in any manner which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age." 29 U.S.C. § 623(a)(2). Section 623(f) creates five exceptions to liability that would otherwise exist under Section 623(a). In Section 623(f)(1), Congress exempted from unlawfulness "any action otherwise prohibited" if age was a "bona fide occupational qualification reasonably necessary to the normal operation of the particular business"; the "otherwise prohibited" action was based on reasonable factors other than age; or the action was required by a law in the country in which the workplace was located. With limitations, Section 623(f)(2), exempts an action "otherwise prohibited under [this section]" if it is taken "to observe the terms of a bona fide seniority system . . . not intended to evade the purposes of this chapter" or "to observe the terms of a bona fide benefit plan." The consistent use of the words, "otherwise prohibited," suggests that Section 623(f) creates affirmative defenses because the various fact patterns listed are exceptions to liability that would otherwise exist.
 
 
 45
 However, even assuming that Section 623(f)(1) is ambiguous, at least two key canons of construction support placing the burden of proof on the employer. First, we must construe the meaning of Section 623(f)(2) in light of Section 623 as a whole. See Gottlieb, 436 F.3d at 338. The architecture of Section 623 is simple. Section 623(a), (b), (c), (d), and (e) define unlawful practices. Then, Section 623(f) creates exemptions to liability for certain actions prohibited by Section 623(a),(b), (c), and (e).[2] If plaintiffs were required to show that no RFOA existed, Congress logically would have included this provision within the liability sections, rather than within the exemption sections.
 
 
 46
 The second rule of construction favoring the interpretation of Section 623(f) as creating affirmative defenses is the doctrine of in pari materia. Where two sections are in the same statute and "share the same purpose," they "can, as a matter of general statutory construction, be interpreted to be in pari materia," that is, as having the same meaning. United States v. Carr, 880 F.2d 1550, 1553 (2d Cir.1989). All five of Section 623(f)'s exemptions are expressed in parallel fashion: conduct that would be "otherwise prohibited" is rendered lawful if certain facts exist. Further, the first of the Section 623(f)(1) exemptions—the bona fide occupational qualification ("BFOQ") defense—is an affirmative defense. See City of Jackson, 544 U.S. at 233 n. 3, 125 S.Ct. 1536. The principle of in pari materia leads me to believe that, because the RFOA provision is in the same section as the BFOQ defense and uses the same words—"otherwise prohibited"—Congress likewise intended the RFOA provision as an affirmative defense.
 
 
 47
 Interpreting the RFOA provision and other Section 623(f) exemptions as affirmative defenses is also supported by Congress's enactment of the Older Workers Benefit Protection Act ("OWBPA"), Pub.L. No. 101-433, 104 Stat. 978 (1990) (codified in relevant part at 29 U.S.C. § 623(f)(2)), after the Supreme Court held that the benefit plan exemption of Section 623(f)(2) did not create an affirmative defense, see Public Employees Retirement System of Ohio v. Betts, 492 U.S. 158, 181, 109 S.Ct. 2854, 106 L.Ed.2d 134 (1989). Prior to 1990, the Section 623(f)(2) exceptions— bona fide seniority systems and benefit plans—did not include language specifying that these exemptions apply to conduct "otherwise prohibited." See 29 U.S.C. § 623(f)(2) (1990). In 1989, the Supreme Court held that the bona-fide-benefit plan exception "is not so much a defense to a charge of age discrimination as it is a description of the type of employer conduct that is prohibited in the employee benefit plan context" and that plaintiffs were required to show that a benefit plan was a subterfuge in order to prevail. Betts, 492 U.S. at 181, 109 S.Ct. 2854. Congress responded by enacting OWBPA, which modifies the ADEA in significant respects. In its findings, Congress indicated that Betts required "legislative action ... to restore the original congressional intent in passing and amending the [ADEA]." Pub.L. 101-133 § 101. For our purposes, the relevant change was the insertion of "any action otherwise prohibited" into Section 623(f)(2). See id. § 103.
 
 
 48
 A detailed report of the Senate Labor and Human Resources Committee concerning OWBPA states that Congress inserted "otherwise prohibited," "language ... that is commonly understood to signify an affirmative defense" into Section 623(f)(2) to make it clear "that the employer bears the burden to plead and prove the defenses and exceptions established in that section." S.Rep. No. 101-263, as reprinted in 1990 U.S.C.C.A.N. 1509, 1535. The Committee added that it endorsed "the uniform body of federal court decisions" holding that the BFOQ exception was an affirmative defense as well as circuit court decisions imposing the burden of proving the reasonable—factors defense on the employer. Id. (citing Criswell v. Western Airlines, 709 F.2d 544, 552-553 (9th Cir. 1982), affirmed on other grounds, 472 U.S. 400, 105 S.Ct. 2743, 86 L.Ed.2d 321 (1985); Laugesen v. Anaconda Co., 510 F.2d 307, 315 (6th Cir.1975), Cova v. Coca-Cola Bottling Co. of St. Louis, 574 F.2d 958, 959-60 (8th Cir.1978)).
 
 
 49
 Of course, the OWBPA's legislative history is not relevant to determining the intent of the legislators who enacted Section 623(f)(1), which was not changed by OWBPA. See Pittston Coal Group v. Sebben, 488 U.S. 105, 118-19, 109 S.Ct. 414, 102 L.Ed.2d 408 (1988). However, the legislative history discussed is probative of the meaning Congress normally assumes will be ascribed to the words "otherwise prohibited" when they preface exemptions to liability.
 
 
 50
 Finally, several circuits have characterized the RFOA provision and other Section 623(f) exemptions as affirmative defenses. See Jankovitz v. Des Moines Indep. Cmty. Dist., 421 F.3d 649, 651 (8th Cir.2005) (characterizing as an affirmative defense employer's claim of a bona fide voluntary early retirement incentive plan pursuant to 29 U.S.C. § 623(f)(2)(B)(ii)); Erie County Retirees Assoc. v. County of Erie, Pa., 220 F.3d 193, 199 (3d Cir.2000) (characterizing the RFOA exemption as an "affirmative defense"); Baker v. Delta Air Lines, Inc., 6 F.3d 632, 639 (9th Cir.1993) (stating that "[o]nce the plaintiff establishes a prima facie case that age was a determining factor in the employment decision, the defendant-employer can rebut the prima facie case and/or assert any number of affirmative defenses [including] the RFOA defense."); Heiar v. Crawford Co., Wis., 746 F.2d 1190, 1197-99 (7th Cir.1984) (requiring employer to prove that age was a BFOQ); Cova, 574 F.2d at 959-60 (holding that if the plaintiff makes out a prima facie case of age discrimination, the employer must "show[] that the discharge was `based on reasonable factors other than age,'" and, if the employer meets that burden, the plaintiff must show that "age was a determining factor in the discharge") (quoting 29 U.S.C. § 623(f)(1)); Laugesen, 510 F.2d at 313 (stating in dicta that the BFOQ exemption is an affirmative defense).[3] The majority cites only one case, Pippin v. Burlington Resources, 440 F.3d 1186, 1200 (10th Cir.2006), holding that an employee bears the burden of disproving an asserted RFOA. Because Pippin contains no analysis, it does not disturb my conclusion that the weight of authority indicates that Congress intended that the employer bear the burden of proving a RFOA.
 
 
 51
 Based on the language and structure of the statute, the weight of authority, and the legislative history of the OWBPA, I conclude that the RFOA exemption is an affirmative defense. The majority, however, holds that the employees must disprove the employer's claim of a RFOA because (1) the City of Jackson court "nowhere suggested that the burden of persuasion with respect to the legitimacy of the business justification was being shifted to the employer"; (2) City of Jackson holds that "`Wards Cove's pre-1991 interpretation of Title VII's identical language remains applicable to the ADEA,'" and "Wards Cove explained that the plaintiff bears the burden of persuasion to defeat the employer's `business necessity' justification because the plaintiff bears the ultimate burden under Title VII to `prove that it was "because of [his] race, color," etc., that he was denied a desired employment opportunity,'" Majority op. at 141-142 (quoting City of Jackson, 544 U.S. at 240, 125 S.Ct. 1536, and Wards Cove, 490 U.S. at 660, 109 S.Ct. 2115); and (3) City of Jackson acknowledged that age—as opposed to race and sex—does sometimes correlate with reasonable performance factors and thus the ADEA has a narrower scope that Title VII, id. at 142.
 
 
 52
 My first problem with the majority's reasoning is that the Wards Cove Court did not analyze the "identical language" at issue in this case. At issue in this case is U.S.C. § 623(f)(1), a statute that was not construed in Wards Cove. The burden of proving a disparate impact claim remains exactly as it is described in Wards Cove, but that does not mean that the burden of proving the statutory RFOA exemption has been changed by Wards Cove or by City of Jackson. After City of Jackson, it remains necessary for a court interpreting Section 623(f)(1) to adhere to the ordinary principles of statutory interpretation applied above. Further, City of Jackson's acknowledgment that age does sometimes correlate with ability or inability to do a job explains why Congress did not amend the ADEA—as it did Title VII—to change certain aspects of Wards Cove and why Congress enacted the RFOA provision but not why the RFOA provision should be read to impose the burden of proof on a particular party. See City of Jackson, 544 U.S. at 240-41, 125 S.Ct. 1536. Therefore, the possible correlation between age and certain work-related factors has no bearing on where the RFOA burden should rest. Rather, an appropriate statutory analysis mandates construing the RFOA provision as imposing the burden on the employer to prove that a RFOA exists.
 
 III. Waiver and Fundamental Error
 
 53
 Where a claim of error has its genesis in the charge or the verdict sheet and the party relying on the error for reversal or a new trial did not object at trial, the error is waived and can be reached only if fundamental error occurred. See Patrolmen's Benevolent Assoc. of the City of New York v. City of New York, 310 F.3d 43, 54 (2d Cir.2002). "Fundamental error is more egregious than the `plain' error that can excuse a procedural default in a criminal trial, and is so serious and flagrant that it goes to the very integrity of the trial." Jarvis v. Ford Motor Co., 283 F.3d 33, 62 (2d Cir.2002) (internal citation and quotation marks omitted).
 
 
 54
 Defendants, who, in my view, bear the burden of proving a RFOA, included RFOA as an affirmative defense to liability in their answer. However, the charge did not include an instruction on the RFOA exemption. Defense counsel did not object to the court's charge in any respect. Nevertheless, defendants argue that they did not waive any aspect of a disparate impact analysis because City of Jackson "represents a change in the prevailing law under the ADEA, and where there has been an intervening change ... no waiver may be found." Appellants' Reply Br. at 9. This argument is not valid. Since the RFOA was enacted, it has been clear that employers can defend against disparate impact liability by showing that employees were selected for termination based on a reasonable factor other than age. Further, courts construing Sections 623(f)(1) and (2) have generally found that they create affirmative defenses to liability. See Jankovitz, 421 F.3d at 651; Erie County Retirees Assoc., 220 F.3d at 199; Baker, 6 F.3d at 639; Cova, 574 F.2d at 959-60; Laugesen, 510 F.2d at 313. Finally, defendants themselves pleaded RFOA as an affirmative defense. Under these circumstances, there can be no claim that changes in the law excused defendants' waiver, and defendants must demonstrate that the court's failure to include a RFOA instruction in the charge and a RFOA question in the verdict sheet constituted fundamental error.
 
 
 55
 I see no fundamental error. Parties, as the masters of their cases, should and usually will request the charges that they believe their evidence supports and should object when those charges are omitted. From all that appears in the record before us, defendants may have made a strategic decision not to press the RFOA defense, believing that it would be easier to require plaintiffs to establish disparate impact under the Wards Cove analysis than for defendants themselves to prove a reasonable factor other than age. In addition, I do not consider that a jury that had been properly charged that defendants bear the burden of proving a RFOA would necessarily find for defendants. Such a jury could permissibly find that defendants had not established a RFOA based on the unmonitored subjectivity of KAPL's plan as implemented.
 
 CONCLUSION
 
 56
 For the reasons discussed above, we should adhere to our prior decision and reinstate the vacated judgment. I therefore respectfully dissent.
 
 
 
 Notes:
 
 
 [1]
 The majority quarrels with the phrase, "judicially created," because "Albemarle Paper Co. v. Moody, 422 U.S. 405, 425, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975) located the source of the `business necessity' test in Title VII § 703(h), 42 U.S.C. § 2000e-2(h), which provides that" the administration of professionally developed ability tests not designed, intended, or used to discriminate on a prohibited ground is not an unlawful employment practice. Majority op. at 141 n. 5. However, the Supreme Court has applied its disparate impact analysis in situations far removed from the tests and practices listed in Section 2000e-2(h). See, e.g., Wards Cove, 490 U.S. at 657, 109 S.Ct. 2115 (nepotism, separate hiring halls, rehire preferences, and subjective decision making). The use of disparate impact analysis in areas not covered by Section 2000e-2(h) is certainly judicially created. Further—and more important—Section 2000e-2(h) does not contain the words, "otherwise prohibited," which, as I explain below at 138-141 are important in establishing that the RFOA provision is an affirmative defense.
 
 
 [2]
 Section 623(d) is the ADEA's retaliation provision. Thus the Section 623(f) exemptions would not be relevant
 
 
 [3]
 The majority characterizes these decisions as "inapt," Majority op. at 143 n. 7 because they are disparate treatment cases and were decided prior toCity of Jackson. The majority's position provokes two questions: (1) Is there any evidence that Congress intended different burdens of proof for the RFOA provision depending on whether it is employed in a disparate treatment or a disparate impact case? and (2) Is it logical to assume that the Supreme Court rejected existing interpretations of the RFOA provision sub silentio and without analysis?